1  CORREEN FERRENTINO
   SBN 172485
2  FERRENTINO & ASSOCIATES, INC.
   600 West Santa Ana Blvd, Suite 925
3  Santa Ana, CA 92701
   Telephone: 714-973-2024
4  Facsimile: 714-973-2025
5  E-Mail: cori@ferrentinolaw.com

6  KARREN KENNEY, SBN 174872
7  575 Anton Blvd., 3rd Floor
   Costa Mesa, CA 92626
8  Telephone: 714-504-5588
9  E-Mail: karren.kenney@gmail.com

10 Attorneys for Defendant *Safieh Fard*

11              UNITED STATES DISTRICT COURT
12        FOR THE CENTRAL DISTRICT OF CALIFORNIA
                                      )
13 UNITED STATES OF AMERICA,          ) Case: SACR 07-52-CJC
                                      )
14        Plaintiff,                  ) FARD'S OBJECTIONS TO THE
                                      ) PSR.
15        vs.                         )
                                      ) Sentencing Date: May 13, 2011
16 Safieh Fard        Defendant       ) Hearing Time: 11:00
                                      )
17 _____)

18 TO THE HONORABLE CORMAC J. CARNEY, UNITED STATES DISTRICT
   JUDGE, THE UNITED STATE ATTORNEY'S OFFICE AND ITS ATTORNEYS
19 OF RECORD, ERIN MELLEN AND MARK WILLIAMS:

20        Defendant SAFIEH FARD, by and through his counsel of record, CJA

21 Panel Attorney Correen Ferrentino and Karren Kenney, hereby files these

22 objections to the Presentence report filed April 8, 2013.

23

24

25

26

27

28

                                  1

## Fard's Supplemental Objections to the Presentence Report
## Disclosed May 3, 2013

**Paragraph 11**

Ms. Fard objects to the extent to which probation concludes she provided false information to the bank.

**Paragraph 13**

Ms. Fard objects to the representation that she knew Bahramian overstated her income or owed capital gains for this sale.  Quite the contrary, there was no evidence Fard knew Bahramian's application stated she had a monthly income of $40,000.  As Mina Azarian testified this information was provided by Bahramian during their meeting. In addition, the evidence at trial established that Bahramian did not pay any money to Fard and instead signed a note for $800,000 for the down payment as reflected in the escrow documents, 1031 exchange records and her testimony.  Fard never received payment on the note from Bahramian and therefore did not believe she owed capital gains.  Ms. Fard did however provide mortgage documents to her tax preparer, Vicki Mulak of the sale and the 1031 exchange relating to this transaction.  Ms. Mulak did not to include the sale or the 1031 exchange on her return.

**Paragraph 16**

Ms. Fard objects to the representation that A. Kikaleye attempted to obtain a mortgage loan in 2004 at her direction.  A. kikaleye did not testify at trial and there was no other evidence at trial that Ms. Fard directed him to obtain this mortgage.

//

//

//

Defendant's Sentencing Position Memorandum

**Paragraph 17**

Ms. Fard objects to the representation the Ms. Fard directed M. Kikalaye to sell 2312 Ocean front to a third party in 2004.  M. Kikalaye did not testify at trial and the buyer  did not testify that Fard directed the sale.

**Paragraph 18**

Ms. Fard objects to the representation that she directed M. Kikalaye or A. Kikaleye to withdraw or transfer any money.  Neither M. Kikalaye nor A. Kikalaye testified at trial and there is no evidence this was done at her direction.

**Paragraph 19**

Ms. Fard objects to the representation that she directed M. Kikalaye or A. Kikaleye to withdraw or transfer any money or A. Kikallaye to obtain or cash any cashier's checks.  Neither M. Kikalaye nor A. Kikalaye testified at trial and there is no evidence any of this conduct was done at her direction. Presumably the jury found Fard conspired to launder money but to conclude she directed all of the transactions in paragraph 19 overstates what the jury had to conclude, merely that Fard agreed to launder some proceeds of mortgage fraud.  This could have been found based on money invested into properties rather than transactions involving cashier's checks.

**Paragraph 20**

Ms. Fard objects to the representation that she directed M. Kikalaye to falsely report a loss on the sale of 2312 Oceanfront in 2006. M. Kikalye did not testify at trial and there was no evidence Fard directed him to do this.

//

//

//

Defendant's Sentencing Position Memorandum

**Paragraph 21**

Ms. Fard objects to the representation she directed M. Kikalaye to obtain a mortgage in July 2000 for 2314 Ocenafront and to falsely state his income and citizen status.  M. kikalaye did not testify at trial and there was no evidence Fard directed him to do this.  In addition, there was substantial evidence that information was changed on the mortgage application that Mina Azariani admitted to preparing and subsequent typed documents prepared internally at Washington Mutual.

**Paragraph 23**

Ms. Fard objects to the representation that in 1999 she bought 2400 Oceanfront from a third party and did s by obtaining a fraudulent loan of $750,000 from an unspecified lender.  There was no evidence of this at trial and the fact the lender is unspecified supports the mere speculation behind this conclusion. Further, Ms. Fard did not fail to report any capital gain on the sale of this property to her sister, Bahramian, in 2001, because as the evidence demonstrated at trial by testimony by Bahramian and tax preparer Gary Pickett and escrow documents, Ms. Fard  did not receive any money from Bahramian.  Instead Ms. Fard carried an $800,000 note.   In fact, Pickett admitted on cross examination at trial that he was given mortgage documents from Ms. Fard made reference to it in his workpapers however he did not include the sale on the tax return.

**Paragraph 25**

Ms. Fard objects to the representation she directed A. Kikalaye to obtain a mortgage in March 2004 for 3075 Broadway, Escondido in the amount of $431,000.  A. kikalaye did not testify at trial and there is no evidence of her direction.  In addition, Fard provided information to the

Defendant's Sentencing Position Memorandum

1  probation officer during the interview on April30, 2013,  that she still resides

2  at this location with her elderly mother and that she modified the loan on this

3  property.   She also indicated she no longer rents out rooms but rents space

4  for individuals to store property.

5  **Paragraph 26**

6    Ms. Fard objects to the representation that she 915 South Casino center

7  Drive, Las Vegas.  As submitted in Ms. Fard's supplemental exhibits, she was

8  not a buyer or a borrower on any of the mortgage documents.  Ms. Fard

9  merely invested money into the property.  She did not submit a letter to

10  Citibank asking it to consider financing the property. Instead, the evidence at

11  trial through government witness Michael Collins and documentary evidence

12  is that Fard did not prepare, sign or verify the Citibank letter.  Ms. Fard also

13  objects to the representation that Citibank sold the loan to Lone Star at a loss

14  of $1,157,640.10.  As demonstrated in Ms. Fard's supplemental exhibits, there

15  is no record of a transfer of this property from Citibank to Lone Star.   In

16  addition, Farah Anderson and Michael Collins were desperately trying to

17  refinance, modify the loan or sell the property. Collins testified that the

18  economic climate and city construction in front of the building caused the

19  drastic decrease in value.  Ultimately, the evidence showed Ms. Fard invested

20  in this property but did not fraudulently represent anything to anyone to

21  obtain a mortgage and in fact did not obtain a mortgage.

22

23  **Paragraphs 30 and 31**

24    Ms. Fard was interviewed on April 30, 2013.  Ms. Fard has

25  demonstrated her acceptance of responsibility. Under USSG §3E1.1, Ms. Fard

26  should be given a two level reduction for acceptance of responsibility.

27  Conviction by trial does not automatically preclude a defendant from

28

Defendant's Sentencing Position Memorandum

receiving this reduction. (n. 2.) This court is entitled to great deference when finding acceptance of responsibility because of its unique position to evaluate Ms. Fard's statements and conduct throughout these proceedings. (n. 3.)  The court should consider various factors, including whether a defendant surrendered, her rehabilitative efforts, and voluntary withdrawal from criminal conduct or associations.  (n. 1.)  The reduction for acceptance of responsibility for this conduct recognizes a legitimate societal interest.

Here, Ms. Fard demonstrated her acceptance of responsibility in several important ways.  After Ms. Fard met with attorney Perkins who provided comprehensive counsel to Ms. Fard regarding all of the convoluted mortgage transactions and advised her of the potential problems and legalities, Ms. Fard ceased from applying for any additional mortgages and disassociated herself with Mina Azariani, the Washington Mutual Broker who facilitated all but one of Ms. Fard and her family's loans. (n. 1, (D).  She also surrendered to authorities when the Indictment was filed and agreed to go into custody.  She appeared in court in custody at her initial appearance.  (n. 1, (D).  Finally, Ms. Fard voluntarily filed amended tax returns for the years at issue in this case and was willing to pay any taxes due but was informed none are owed at this time by the IRS.  (note 1, (G).)

**Paragraphs 32-51**

Ms. Fard incorporates her arguments and objections to probations offense level calculations as set forth in her sentencing memorandum. (Document 360.)

**Paragraphs 126, 141 and 159**

Ms. Fard objects to the representation in paragraph 126 that she has a cash flow of $1903.  In comparison to paragraph 141 it appears the PSR failed

Defendant's Sentencing Position Memorandum

1   to take into account her mortgage of $2600 in determining cash flow.  Ms.

2   Fard's cash flow is therefore -697 per month. Therefore, Ms. Fard does not

3   have the ability to pay a fine.

4

5

6   DATED: May 9, 2013                        Respectfully submitted,

7

8

9                                          _s/Correen Ferrentino_____
                                            CORREEN FERRENTINO
10                                          KARREN KENNEY
                                            *Attorney for Defendant FARD*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Sentencing Position Memorandum

# CERTIFICATE OF SERVICE

I, Correen Ferrentino, declare:

That I am a citizen of the United States and resident or employed in Orange County, California; that my business address is 600 W. Santa Ana Blvd, Suite 935, Santa Ana, Ca 92701; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That on May 9, 2013, I caused to be transmitted via facsimile to the person(s) below the **DEFENDANT'S SUPPLEMENTAL OBJECTIONS TO PSR**

**Robert Kelpa, USPO**                                             **emailed**
**United States Probation Department**
**United States Courthouse**
**600 U.S. Courthouse**
**312 Spring Street**
**Los Angeles, Ca. 90012**

This Certificate is executed on May 9, 2013 at Santa Ana, California.  I certify under penalty of perjury that the foregoing is true and correct.

May 9, 2013                                             s/Christina Bristol
                                                                     Christina Bristol

Defendant's Sentencing Position Memorandum